# United Stated Bankruptcy Court, Northern District of Illinois

| Name of Assigned Judge | A. Benjamin Goldgar | Case No. | 09 B 32672 |
|---|---|---|---|
| **DATE** | March 24, 2010 | **ADVERSARY NO.** | |
| **CASE TITLE** | Life Fund 5.1 LLC, *et al.* (jointly administered) | | |
| **TITLE OF ORDER** | Order denying motion of Group of Investors to dismiss or alternatively to transfer | | |

**DOCKET ENTRY TEXT**

The motion of the Group of Investors to dismiss these cases or transfer them to the Southern District of Texas is denied.

[For further details see text below.]

## STATEMENT

This matter is before the court for ruling on the motion of the Group of Investors to dismiss these jointly administered bankruptcies pursuant to section 1112(b) of the Code or alternatively to transfer them to the Southern District of Texas pursuant to 28 U.S.C. § 1412. For the reasons that follow, the motion will be denied.

### 1. Facts

The following facts are drawn from the parties' papers, this court's docket, and the docket of a related matter in the Circuit Court of Cook County, Illinois (of which this court can take judicial notice). No facts appear to be in dispute.

These bankruptcy cases were filed on September 2, 2009, by seven debtors: Life Fund 5.1 LLC, Life Fund 5.2 LLC, A&O Life Fund LLC, A&O Resource Management, Ltd., A&O Bonded Life Settlement LLC, A&O Bonded Life Assets LLC, and Houston Tanglewood Partners LLC. The debtors operated in what is known as the "life settlement industry," soliciting funds from individual investors to acquire life insurance policies.

The petition in each case was filed by one Russell Mackert, a Texas attorney, as manager of an entity called Shepherd Capital Management. Shepherd is a Texas limited

**STATEMENT**

company formed on February 16, 2008. Under a management agreement dated January 30, 2008, with the debtors and several other entities, Shepherd agreed to provide certain management services to the debtors, among others.

In July 2009, Shepherd filed an action in the Circuit Court of Cook County, Illinois, styled *Shepherd Capital Management, LLC v. A&O Life Funds, LP, et al.*, No. 09 CH 22301, naming as defendants, A&O Life Funds, LP and Physicians Trust LLC. A&O Life Funds was alleged to be the managing member or otherwise in control of each of the seven debtors here, and Physicians Trust was alleged to be the managing partner of A&O Life Funds. The complaint sought a declaratory judgment that Shepherd had authority to file bankruptcy cases for the debtors. Although an attorney appeared in the action for one of the defendants, no answer was ever filed for either of them, and on August 27, 2009, the state court entered a default judgment granting Shepherd the desired declaration.

On September 2, 2009, Shepherd issued a document entitled "certificate of resolution" that cited the declaratory judgment and resolved (among other things) to file these bankruptcy cases. The cases were filed the same day.

Just days earlier, two of the debtors, A&O Resource Management, Ltd., and Houston Tanglewood Partners LLC, had forfeited their charters. The forfeitures came at the instance of the Texas Secretary of State and were the result of a failure to pay Texas franchise taxes the preceding year.

One week after the bankruptcy cases were filed, the U.S. Trustee moved under section 1104(a) of the Bankruptcy Code, 11 U.S.C. § 1104(a), for the appointment of a trustee. The motion was granted, and on September 21, 2009, the appointment of Patrick Collins as chapter 11 trustee was approved.

Around the same time, a group of investors in the debtors (for purposes of this ruling, simply "the Investors") moved to dismiss the bankruptcy cases or transfer them to the Southern District of Texas. In their motion, the Investors argued that the cases should be dismissed because Shepherd lacked authority to file them and because two of the debtors had been dissolved. Alternatively, the Investors argued, the cases have no ties to Illinois and should be transferred to Texas for the convenience of all concerned.

For the next several months, the motion to dismiss or transfer was continued repeatedly to permit the Investors to take Mackert's deposition, but they were unable to run him to ground. In January 2010, a briefing schedule was at last set on the motion, and Collins and the U.S. Trustee filed responses urging its denial.

**STATEMENT**

Meanwhile, the Investors requested the election of a new trustee, Jeff Marwil, to replace Collins. The election was held, and Marwil prevailed. His election was disputed, but the dispute was resolved in Marwil's favor. Despite their election of Marwil, a Chicago lawyer, as trustee, the Investors continue to pursue either dismissal or transfer of the cases. (The Investors recently hinted they might withdraw the dismissal request, but they have never withdrawn it.) For his part, Marwil has adopted Collins's response and objects to the motion.

### 2. Discussion

The motion to dismiss or transfer will be denied. Dismissal is inappropriate because the Investors have not shown that Shepherd lacked authority to file the bankruptcy cases or that any of the debtors lacked capacity to be debtors in bankruptcy. Transfer is inappropriate because the Investors have not shown that the convenience of the parties or the interest of justice warrants transferring the cases to Texas.

### i. Dismissal

First, dismissal. Section 1112(b)(1) of the Code permits the court, on the request of a party in interest or the U.S. Trustee, to dismiss or convert a chapter 11 case for "cause." Section 1112(b)(4) lists sixteen examples of "cause," but the list is not exclusive. *In re Tekena USA, LLC*, 419 B.R. 341, 346 (Bankr. N.D. Ill. 2009). A party's lack of authority to file bankruptcy on behalf of a debtor constitutes cause for dismissal. *In re Comscape Telecomms., Inc.*, ___ B.R. ___, ___, 2010 WL 532066, at *12 (Bankr. S.D. Ohio, Feb. 11, 2010); *In re Gen-Air Plumbing & Remodeling, Inc.*, 208 B.R. 426, 430 (Bankr. N.D. Ill. 1997). So does a debtor's lack of capacity to file bankruptcy. *In re Markus Enters., Inc.*, 91 B.R. 459, 460 & n.1 (M.D. Tenn. 1988); *see In re Seaman*, 340 B.R. 698, 708 (Bankr. E.D.N.Y. 2006) (dictum).

A bankruptcy court has broad discretion to dismiss a chapter 11 case for "cause" under section 1112(b). *In re Woodbrook Assocs.*, 19 F.3d 312, 316 (7th Cir. 1994). To do so, however, there must first in fact be "cause." The burden on a motion to dismiss under section 1112(b) lies squarely with the movant to demonstrate cause by a preponderance of the evidence. *Id.* at 317; *Tekena*, 419 B.R. at 350.

The Investors have not met that burden. They are right, of course, that the state court's judgment in no way bars an examination of Shepherd's authority to file the cases. Marwil and the U.S. Trustee contend that the *Rooker-Feldman* doctrine prevents this court from contradicting the judgment, but they are wrong. *Rooker-Feldman* is a jurisdictional doctrine concerned with actions brought in federal court "by state-court losers complaining of injuries caused by state-court judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). There is no state court loser here, since neither of the two defendants in the state court action is a debtor, and these cases do not invoke federal jurisdiction to redress an

## STATEMENT

injury caused by the state court judgment. The issue that Marwil and the U.S. Trustee raise is instead whether the judgment has some preclusive effect. *See Freedom Mortgage Corp. v. Burnham Mortgage Corp.*, 569 F.3d 667, 671 (7th Cir. 2009) (noting that *Rooker-Feldman* does not "turn all disputes about the preclusive effects of judgments into matters of federal subject-matter jurisdiction").

The state court's declaratory judgment has no preclusive effect here – at least not on the Investors. Whether a state judgment is preclusive in a federal case depends on state law. *Brokaw v. Weaver*, 305 F.3d 660, 669 (7th Cir. 2002). The only preclusion doctrine that could conceivably bind the Investors is issue preclusion, also known as collateral estoppel. But the state judgment here is a default judgment, and Illinois "subscribes to the majority view that a default judgment cannot form the basis for collateral estoppel." *Clear Channel Outdoor, Inc. v. Nikitas (In re Nikitas)*, 326 B.R. 127, 131 (Bankr. N.D. Ill. 2005); *see also Lopez v. Reyes (In re Reyes)*, Nos. 07-80407, 07-8070, 2008 WL 2020501, at *2 (Bankr. C.D. Ill. May 9, 2008). In Illinois, issue preclusion applies only to a point actually litigated, and "by definition nothing is 'actually litigated' when a default is entered." *Nikitas*, 326 B.R. at 131. Shepherd's default judgment therefore does not prevent an inquiry into its authority to file the bankruptcy cases.

But merely moving the judgment aside so an inquiry can take place is not enough. The Investors still have the burden of proving that Shepherd in fact lacked the authority to file the bankruptcy cases, and they have not satisfied that burden. In their motion, they offer no cogent argument – one supported with evidence and legal authority rather than merely invective – establishing that Shepherd lacked the right to file the cases on the debtors' behalf. For the most part, the Investors simply raise lots of interesting questions about Mackert, Shepherd, and the debtors, questions they invite the debtors and their counsel to answer. But if the cases are to be dismissed under section 1112(b), the burden is on the Investors, not the debtors or anyone else, to provide the answers. They provide none.

One potentially interesting question the Investors raise is how the January 30, 2008 management agreement could have given Shepherd authority to file the bankruptcy cases when Shepherd itself was not formed until February 16, 2008 – two weeks *after* the agreement was signed. The Investors contend that this timing renders the management agreement a "nullity."

But the Investors cite no legal authority to support this contention and fail to run with it factually. As it happens, a contract can sometimes bind a corporation although the corporation did not exist when the contract was made. A person acting as a "promoter" can enter into a contract on behalf of an unformed corporation, and the contract will become binding once the corporation ratifies it. *See generally* 1A William Mead Fletcher, *Fletcher Cyclopedia of Corporations* §§ 205, 207 (2002 rev.). Whether Shepherd ratified the management agreement after February 16, 2008, or failed to do so are questions of fact on which the Investors again offer no evidence.

**STATEMENT**

The Investors also note that two of the debtors, a limited liability company and a limited partnership, were dissolved just before the bankruptcy cases were filed. The Investors argue (once more without citation to any legal authority) that these two debtors therefore lacked the capacity to file bankruptcy. At a minimum, the Investors suggest, the cases of these debtors should be dismissed.

Not so. An entity entitled to be a debtor under chapter 7 is also entitled to be a debtor under chapter 11. 11 U.S.C. § 109(d). A "person" may be a debtor under chapter 7, 11 U.S.C. § 109(b), and "person" is defined to include both a "partnership" and a "corporation," 11 U.S.C. § 101(41). A corporation, in turn, includes a limited liability company. *See Brandt v. Tabet DiVito & Rothstein, LLC (In re Longview Aluminum, L.L.C.)*, 419 B.R. 351, 354 (Bankr. N.D. Ill. 2009). So both a partnership and an LLC are entitled to be chapter 11 debtors. But whether a partnership or an LLC dissolved under state law can be a debtor is a matter of state law, not bankruptcy law. *In re International Zinc Coatings & Chem. Corp.*, 355 B.R. 76, 83 (Bankr. N.D. Ill. 2006); *In re StatePark Bldg. Group, Ltd.*, 316 B.R. 466, 472 (Bankr. N.D. Tex. 2004).

As Marwil correctly notes, Texas limited partnerships and LLCs can be dissolved under the Texas Tax Code for failure to pay state franchise taxes, but once dissolved they have three years to wind up their affairs. *See* Tex. Bus. Orgs. Code § 11.356. During this three-year period, Texas bankruptcy courts have held, the dissolved entities are eligible to be debtors in bankruptcy. *See In re American Heartland Sagebrush Secs. Inves., Inc.*, 334 B.R. 848, 852-53 (Bankr. N.D. Tex. 2005); *StatePark Bldg. Group*, 316 B.R. at 472-75; *In re ABZ Ins. Servs., Inc.*, 245 B.R. 255, 259-62 (Bankr. N.D. Tex. 2000). Since the two debtors here, A&O Resource Management and Houston Tanglewood Partners, were dissolved just six days before they filed bankruptcy, they were well within the three years and were eligible under Texas law to be debtors.

Because the Investors have failed to meet their burden to show either that Shepherd lacked authority to file these cases or that two of the debtors were ineligible to be debtors, the motion to dismiss will be denied.

**ii. Transfer**

Next, transfer. Section 1412 permits a district court to transfer a case or proceeding under title 11 to another district "in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. In determining whether a transfer is appropriate, courts typically consider five factors: (1) the location of the debtor; (2) the location of the creditors; (3) the location of the debtor's assets; (4) the location of witnesses necessary to the administration of the estate; and (5) the forum that would provide the most efficient and economical administration of the case. *In re B.L. McCandless LP*, 417 B.R. 80, 82-83 (Bankr. N.D. Ill. 2009); *In re Pickwick Place L.P.*, 63

**STATEMENT**

B.R. 290, 291-92 (Bankr. N.D. Ill. 1986).  Venue is presumed proper in the district where a bankruptcy case is filed, and the burden of proving otherwise is on the party seeking a transfer.  *McCandless*, 417 B.R. at 82.  Whether to transfer a case rests with the bankruptcy court's discretion.  *Id.*

The Investors have not met their burden of proving a transfer is warranted.  As the U.S. Trustee properly points out, the motion that the Investors filed last September provides neither evidentiary nor legal support for a transfer.  In fact, the motion barely mentions transfer at all, the Investors expending most of their energy on dismissal (and that with little effect).  In their reply in support of the motion, the Investors do at last offer an argument of sorts, though still no citation to any legal authority.  But new arguments in a reply are dirty pool:  they sandbag the opponent, depriving him of a chance to respond.  Arguments offered for the first time in a reply are therefore deemed waived.  *Fogel v. Linnemann (In re Mission Bay Ski & Bike, Inc.)*, Nos. 07 B 20870, 08 A 55, 2009 WL 2913438, at *8 (Bankr. N.D. Ill. Sept. 9, 2009); *In re Farrar-Johnson*, 353 B.R. 224, 227 n.3 (Bankr. N.D. Ill. 2006).  Since the Investors' entire transfer argument appears in their reply, the request for a transfer is waived.

That said, it may be worth noting that the *McCandless* factors, applied to the sparse record the parties have created, do not weigh in favor of transferring these unusual cases.

• *The location of the debtors.*  According to Marwil, five of the seven debtors are Illinois limited liability companies, and at least some of them maintained offices in Chicago.  (Marwil offers no factual support for these contentions, but the Investors do not dispute them.)  The debtors apparently chose to file the cases here – at least the Investors have not demonstrated otherwise – and a debtor's choice of forum is typically entitled to "great weight."  *In re Enron Corp.*, 274 B.R. 327, 342 (Bankr. S.D.N.Y. 2002).

But the debtors are not the only ones in Illinois.  So is Marwil, the chapter 11 trustee himself, elected at the Investors' urging.  And so are the debtors' records, or most of them, since they are now in the trustee's possession.  For all intents and purposes, then, the debtors are located at least as much in Illinois at this point as they are in Texas.

The Investors do not take issue with any of this but would have the court equate the debtors with their former principals, all of whom allegedly reside in the Southern District of Texas.  Because the former principals are located in Texas, so the argument goes, the debtors themselves must be located in Texas, too.  But the Investors offer no authority for making this equation.  To make it would likely require a showing that the principals were the alter egos of the debtors, a showing akin to piercing the corporate veil.  The Investors have not attempted such a showing here.

The location of the debtors, then, is a neutral factor, weighing neither for nor against

**STATEMENT**

transfer.

• *The location of creditors.* The parties discuss only where the many investors are located. Nothing is said about how much they are owed. Ordinarily, the "location of creditors" factor depends not only on the number of creditors but also on the amounts of their claims, since it is more important for creditors with large claims to have a convenient forum. *In re Dunmore Homes, Inc.*, 380 B.R. 663, 676 (Bankr. S.D.N.Y. 2008). An analysis of the claims registers in the bankruptcy cases would have permitted a determination of where the creditors' center of gravity really lies here. But the parties have not performed that analysis, and the court has no obligation to perform it for them. *See Mission Bay Ski & Bike*, Nos. 2009 WL 2913438, at *8.

So all we have are the locations of creditors. According to the parties (and these facts, too, are not disputed), the creditor body consists of about 720 investors, of whom roughly half live in Texas. The other half are scattered among thirty-eight states, with sixty of them in Illinois. A Texas court would thus provide a convenient forum for only about half the creditor body, although no court except a Texas court would be as convenient for as many creditors.

The better question is not how many creditors are located where, but why the location of creditors matters in these cases. The debtors, it must be remembered, are investment funds. The creditors, all apparently unsecured, are investors in the funds. The funds are not operating in any real sense, and the debtors' estates are currently under the administration of a chapter 11 trustee keeping the businesses alive strictly to protect the creditors' investments. Under the circumstances, there is little for the creditor body to do other than sit back, monitor the cases, and hope for the best. If the investors need ready access to the court in which the bankruptcies are pending, they do not explain why.

In short, the parties have submitted insufficient information for a careful decision about the location of creditors. But given the data available as well as the nature of the cases, the creditors' location is also a neutral factor here.

• *The location of the debtors' assets.* This factor is neutral as well. The parties agree that the debtors have no physical assets located in a particular place. The debtors' main assets are life insurance policies and bonds. To the extent the policies and bonds have a physical location at all, they are located in Chicago because the documentation is in the hands of the chapter 11 trustee, Marwil.

The Investors note that the trustee's recovery from the settlement with the receiver of W Financial, Inc. is an asset, and the receiver is in Texas. But the receiver himself is not an asset, of course, and so his location is irrelevant. As for the settlement proceeds, those are dollars, not real or personal property, and when the settlement is paid, the dollars will move from Texas to Illinois at no cost to the estates here.

**STATEMENT**

• *The location of witnesses*.  This factor is impossible to evaluate because the parties have provided no information about potential witnesses.  The trustee maintains that he is the only witness of interest and is in Chicago.  It seems unlikely that Marwil is the only relevant witness in these cases.  The Investors, by contrast, take the position that all relevant witnesses are in Texas but fail to name any.  It is true, as the Investors note, that some potential witnesses were unable to travel to Chicago for the hearing to resolve the trustee election, but that hearing has come and gone.  Despite what the Investors think, the individual investors do not count as potential witnesses – not without some explanation of why they would need to be called.  In fact, no party has suggested *any* specific purpose for which *any* witnesses would be necessary going forward.

It may be that the trustee's pending adversary proceeding against Messrs. Mackert, Oncale, Allmendinger, and Wahab will require discovery from witnesses whose appearance in an Illinois court cannot be compelled.  But if so, the parties again have not said.  The court has no obligation to speculate about these kinds of matters and make the parties' arguments for them.  *See Mission Bay Ski & Bike*, 2009 WL 2913438, at *8.

Given the dearth of information about potential witnesses, the location of witnesses is as neutral a factor as the others.

• *Most efficient and economical forum*.  The debtors' estates, finally, are most efficiently and economically administered here.  It is true that these cases have an undeniable Texas connection.  The debtors had offices in Texas and seem to have operated primarily from Texas.  The debtors' former principals are apparently Texas residents.  Mackert is also a Texas resident.  Others with connections to the debtors, such as John and Laura Spalding, are in Texas.  The investors from Texas are the largest group, and the Texas authorities, notably the Texas State Securities Board, have spent a great deal of time and energy investigating the debtors' affairs.

But none of this means the debtors' bankruptcy estates can be administered more efficiently in a Houston bankruptcy court.  In fact, the contrary is true.  As Marwil points out, these cases have now been pending in Chicago for seven months under the auspices of an Chicago chapter 11 trustee.  The debtors' books and records are in the chapter 11 trustee's possession in Chicago.  The chapter 11 trustee, the U.S. Trustee, and to some extent even this court have become educated about the debtors and their affairs.

Most important, in November the Investors chose to elect a Chicago chapter 11 trustee, Marwil, to replace the appointed chapter 11 trustee, Collins.  Since Marwil is now the elected trustee, these cases will have a Chicago chapter 11 trustee whether they are transferred or not.  A Chicago trustee will have considerably greater access to the bankruptcy court at considerably less expense if the cases remain here.  Marwil also has easier access to Collins and his counsel, should that access be necessary, because all are in Chicago.  As for witnesses and documents in

**STATEMENT**

Texas, Marwil will have to travel from Chicago to Texas for third-party discovery whether the cases are pending here or there.

In contending otherwise, the Investors stress the high cost of having the cases heard in Chicago. But they fail to explain why the administration of the cases would be any more costly in Chicago than in Houston. The Investors assert that Collins incurred huge attorneys' fees during his tenure as chapter 11 trustee, but once again they offer no evidence to support their assertion. And even if the Investors are right, they have not demonstrated (or even tried to demonstrate) that Collins's fees were unnecessary, or that a Houston chapter 11 trustee would not have incurred the same fees had the cases been transferred early on.

In addressing transfer requests under section 1412, "the most weight is given to the economic and efficient administration of the estate." *Dunmore Homes*, 380 B.R. at 676. With a Chicago chapter 11 trustee elected and administering the debtors' estates, these cases are more economically and efficiently administered in Chicago. The court will therefore exercise its discretion to deny the motion to transfer.

### 3. Conclusion

For these reasons, the motion of the Group of Investors to dismiss these cases or transfer them to the Southern District of Texas is denied.

Dated: March 24, 2010

_____
A. Benjamin Goldgar
United States Bankruptcy Judge