**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In Re: | § | Chapter 11 |
| | § | |
| LIFE FUND, 5.1, LLC et al., | § | Case No. 09 B 32672 |
| | § | (administratively consolidated) |
| | § | |
| Debtors | § | Judge A. Benjamin Goldgar |

**STATEMENT OF GROUP OF INVESTORS WITH RESPECT TO**
**MARCH 9, 2011 CONTINUED HEARING ON**
**FIRST AND FINAL APPLICATION OF PERKINS COIE LLP FOR**
**ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES**

A group of approximately 180 investors/creditors[1] ("Group of Investors"), in advance of the March 9, 2011 continued hearing on the First and Final Application of Perkins Coie LLP for Allowance of Compensation for Services Rendered and Reimbursement of Expenses as counsel to Trustee Patrick M. Collins (the "Perkins Application"), makes the following statement:

1.   The Perkins Application was filed on August 31, 2010 and set for initial hearing on September 27, 2010 (the "Initial Hearing").

2.   Prior to the Initial Hearing, on September 24, 2010, Group of Investors filed its Preliminary Objection to and Request for Discovery on First and Final Application of Perkins Coie LLP for Allowance of Compensation for Services Rendered and Reimbursement of Expenses as Counsel to Trustee Patrick M. Collins (the "Preliminary Objection"). As the title of the Preliminary Objection suggests, Group of Investors thought it necessary to conduct discovery as part of the process of objection to the Perkins Application. As Group of Investors said in the Preliminary Objection:

---

[1] Specifically identified in Fourth Supplemental and Amended Bankruptcy Rule 2019 Verified Statement for Group of Investor/Creditors ("Docket No. 466") which was filed September 23, 2010.

160300.1-09/24/10

> Group of Investors require discovery on the Fee Application, given its vague descriptions, lack of an accompanying or approved application from the trustee for whom these services are to have been performed, and on its face it appears that certain tasks were in fact not completed or needed to be re-done by the successor trustee, Mr. Marwil … with the information know at this time, the Application does not support reasonable and necessary work for the time and rate requested, and should be greatly reduced.

Preliminary Objection, ¶ 2.  The position of the Group of Investors was that the Perkins Application should not be considered unless and until there could be a factual determination made that the estate was not going to pay two trustees for the same work, i.e., investigations, indexing of files, etc.  Preliminary Objection, ¶¶ 5-8.

    3.      However, at the Initial Hearing, the Court shot down the idea of taking any discovery on the Perkins Application.  Instead, Group of Investors was instructed to "simply object to the specific entries … [t]hat's the way it usually works."  *See* attached <u>Exhibit A</u>, Transcript of Proceedings, September 27, 2010 ("Tr. 9/27/10"), p. 7.  Specifically:

> THE COURT: Right. I have the application. I read the application. I didn't, obviously, go through the attachments because I anticipated there might be an objection, and there is. And the investors would like to take some discovery, which I suppose they can do. Is it the former trustee's position that they cannot?
>
> MR. NEFF: Your Honor, I'm not quite sure what they want to discover. They mentioned about the invoices. The invoices are what is attached to the fee petition.
>
> THE COURT: Right.  What would discovery accomplish? I mean, you've got the invoices. That's usually what supports a fee application.
>
> MR. GRAHAM: With respect to entries that are vague or entries where we can't tell exactly what the service is for and why they're compensable, and I think were reasonable and necessary at the time they were incurred. We would like to ask questions about those specific entries.
>
> THE COURT: Wouldn't the usual course be simply to object to the specific entries on the grounds that they are vague? Because if they are vague, then the applicant won't get fees. That's the way it usually works. And the burden should really be on the applicant to supply sufficient detail. And I can decide whether I agree with you that they're too vague.  So probably the thing to do

would be to file a more specific objection after you've reviewed the invoices. I guess you have reviewed the invoices. Maybe you haven't reviewed them with the microscope you'd really like to use. And then file something that points out -- because that's what I would require anyway. I mean, I would require that you point out the line items on the invoices that you think are objectionable, on whatever grounds, you know, and then I'll take a look.

      MR. GRAHAM: And, Judge, that sounds reasonable.

      \*        \*        \*        \*        \*

      MR. GRAHAM: Judge, just to be clear, again, I know what you said about discovery, we're not setting any discovery. But I just want to make sure that there was an understanding that I'm not or that we don't -- we're reserving our rights to take discovery. I don't know that we would have to. I don't know what it would be about. But I just don't want there to be an issue about that going forward.

      THE COURT: If you can demonstrate to me that there is a need for discovery, certainly you can take discovery. But right now the way these things usually go is you respond by indicating the line items on the fees that you think are insufficiently specific. And the response to that will be either, yes, they are insufficiently specific or you're right and here's more detail, which may or may not satisfy you. And that, I suppose, since Mr. Neff's folks have the last word, might cause you to come in and say, well, now hold on a minute. And I think we'll just see what happens.

      MR. GRAHAM: That's fine.

      THE COURT: All right.

Tr. 9/27/10, pp. 6-8, 18.

      4.      With that understanding, Group of Investors prepared and filed on November 22, 2010 the Group of Investors Supplemental Response and Objections to Application of Perkins Coie, LLP for Allowance of Compensation for Services Rendered and Reimbursement of Expenses as counsel to Trustee Patrick M. Collins (the "Objection to Perkins Application").

      5.      Group of Investors did the best it could drafting the Objection to Perkins Application without the benefit of discovery. In fact, in at least three places in the objection,

Group of Investors mentions the need for discovery to flesh out the facts relative to the objection. See Objection to Perkins Application, ¶¶ 9, 39 (n.1, p. 32), and 56.[2]

6. On March 2, 2011, the parties appeared before the Court (the "March 2 Hearing") on what Group of Investors believed would be a status hearing on the Perkins Application. Given what the Court had said at the Initial Hearing, Group of Investors believed that the Court was to either (a) rule on the Perkins Application if the Court thought – after reading the pleadings – that further proceedings or discovery were not warranted, or (b) set a discovery schedule and an evidentiary hearing if the Court thought – after reading the pleadings – that further proceedings and discovery were warranted.

7. Thus, it was with some surprise to Group of Investors that, at the March 2 Hearing, the Court expressed great dissatisfaction – even anger – with the objections filed by Group of Investors to the pending fee applications because they raised so many factual issues which, for the Perkins Application, the Court believes an evidentiary hearing is required. With respect to the Objection to Perkins Application, the Court stated:

> Once again, we have this scattershot objection in which the investors simply throw up everything against the wall to see what will stick. There's a price for doing that. The price is that we have lots of factual issues. We have issues about the reasonableness of the rates. We have issues about the experience of counsel. We have issues about whether it was appropriate for Mr. Collins to be selected as the trustee and what the reasons for that selection were. We have factual issues about the condition of the debtors and their files on the petition date. The investors say this case was handed to the trustee "on a silver platter." Mr. Collins asserts that the case was a disaster. We have issues about whether any investigation was even necessary here and whether it benefited the estate. The investors say no investigation was necessary or beneficial. Mr. Collins says all of it was necessary and beneficial. There are questions about the Aviva insurance adversary. The investors say it was filed only because of a trustee mistake, and Mr. Collins says that's not true, there was no mistake. We have questions about

---

[2] Group of Investors would have liked to have taken discovery in conjunction with the objection it filed to the Arnstein & Lehr fee application in these cases. But, again, guided by what it understood was the way the Court usually dealt with these matters, it filed that objection without the benefit of discovery leading, we believe, in great part, to the criticisms about "undeveloped" and "underdeveloped" arguments.

>whether the trustee "assisted" other government agencies and whether the assistance was appropriate. The investors say there was assistance that was not appropriate, and Mr. Collins says otherwise. We have questions about whether the trustee's analysis of the insurance policies was necessary. The investors say no, Mr. Collins says yes. We have questions about whether communications with the investors were necessary. The investors say no, interestingly. Mr. Collins says yes. We have questions about, I don't know how it's pronounced, the Boutte litigation, B-O-U-T-T-E, and was the trustee's involvement required and what it consisted of. Factual questions require an evidentiary hearing. So we are going to have to go to trial on this, and the investors can decide[] just how much of this they really want to make an issue of. If Perkins goes to trial on this, Perkins will be awarded fees for having to pursue its fee application, unless, of course, I disallow the whole amount, which is quite unlikely. So the investors will ultimately be paying for the defense of the fee application. What I am going to do is put this over for a week, and the investors can decide exactly how serious they are about all of this and what they really want to pursue. So I'll see you on the 9th at 10:00.

*See* attached <u>Exhibit B</u>, Transcript of Proceedings, March 2, 2011, pp. 10-12.

8.      Group of Investors agrees with the Court that there should be discovery on the Perkins Application.

9.      However, Group of Investors is reluctant to pursue this matter further under the rules (the "price") the Court has imposed for same. Group of Investors understands from the Court's statements at the March 2 Hearing that if the Court overrules any single part of the Objection to Perkins Application, the Court will award fees to Perkins for "having to pursue its fee application". Though it is not entirely clear to Group of Investors whether that award of fees will take the form of some sort of sanction[3] against Group of Investors and/or its counsel, or some sort of an award of fees from the estate under 11 U.S.C. §330, neither is acceptable.

10.     And, unfortunately, the tone of the Court's statements at the March 2 Hearing leads Group of Investors to believe that, if the Court has not prejudged the matter, it certainly is

---

[3] Though the Court has, of course, the ability to *sua sponte* sanction parties and attorneys before it under Fed. R. Civ. P. 11 (Fed. R. Bank. P. 9011), 28 U.S.C. §1927, and its inherent powers, courts have held that *sua sponte* sanctions are proper only in response to the most egregious conduct and procedural safeguards must be followed. See Fed. R. Bank. P. 9011(c)(1)(B); *Chambers v. Nasco, Inc.,* 501 U.S. 32, 43-45 (1991); *Johnson v. Waddell & Reed, Inc.*, 74 F.3d 147, 151 (7th Cir. 1996).

160300.1-09/24/10                       5

predisposed to rule against Group of Investors and award sanctions to Perkins unless something "quite unlikely" were to happen.

11. Thus, unless the Court were to recuse itself,[4] under the current assurance from the Court that sanctions will be awarded against Group of Investors if it seeks the evidentiary hearing it believes is necessary here, Group of Investors and its counsel feels intimidated and compelled by the statements of the Court at the March 2 hearing to stand on the papers filed – the Objection to Perkins Application – and not seek what it believes is necessary discovery.

12. Group of Investors wants to be clear that it is not withdrawing its Objection to Perkins Application. If the Court is to overrule the Objection to Perkins Application, Group of Investors asks that the Court specifically note that that same has been overruled and not withdrawn and note the circumstances for same as set forth in this Statement.

13. We are more than a year and one-half into the administration of this case. Not one dime has been paid to creditors. No plan or exit to these cases has yet been put forth by the current chapter 11 trustee. Administrative fees continue to be incurred and eat into whatever meager distribution Group of Investors and other creditors might receive in these cases.

14. Group of Investors and its counsel has been consistent since the beginning of these cases in aggressively questioning the need and propriety of these cases, questioning the actions of the first chapter 11 trustee and bristling at the treatment received by Group of Investors and its counsel from the first chapter 11 trustee and his counsel. The first trustee's failings in administering the business of the cases and attitude toward Group of Investors – inconsistent with his duties under the Bankruptcy Code – led Group of Investors to elect the

---

[4] Group of Investors reserves the right to file a recusal motion in a case where, such as here, it would appear that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings … display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. U.S.*, 510 U.S. 540, 555 (1994).

160300.1-09/24/10                                    6

current trustee. The current trustee has had to perform or re-do many of the tasks for which Perkins seeks payment. That is not the fault of Group of Investors but falls squarely at the feet of Perkins. In short, Perkins should not be paid for work that it did not perform, unnecessary work and inflated work.

15. Group of Investors, and indeed all the investors in the A&O products, have lost millions of dollars, first through the scheming of the A&O owners and Russell Mackert and now through the operation of the bankruptcy system that is supposedly designed to protect and conserve the assets. Many investors believe it a travesty of justice that they stand to receive less on a proportionate share than the professionals who were appointed to protect the investors' assets. And many investors question why they and their counsel are vilified for, and discouraged from, having their voices heard in this bankruptcy process.

16. Group of Investors stands by its Objections to Perkins Application. In good faith, Group of Investors believed it was following the process set forth by the Court, the Bankruptcy Rules and case law. If we have offended the Court, we apologize, but we really thought we were doing what the Court had envisioned. It remains that the burden of proving the reasonableness and propriety of Perkins' fees rests with Perkins, not Group of Investors.

Dated: March 8, 2011                    GROUP OF INVESTORS

                                        By:    /s/ Brian M. Graham  _____
                                               One of its attorneys

**OF COUNSEL**                          Lori Hood (TX State Bar No.: 09943430)
Brian M. Graham (IL Bar No. 6243015)    Deborah J. Fritsche (TX State Bar No.
PEDERSEN & HOUPT                        07481150)
161 North Clark Street, Suite 3100      JOHNSON, TRENT, WEST & TAYLOR, L.L.P.
Chicago, Illinois 60601-3242            919 Milam, Suite 1700
(312) 261-2170 – Telephone              Houston, Texas 77002
(312) 261-1170 -- Facsimile             (713) 222-2323 – Telephone
                                        (713) 222-2226 – Facsimile

160300.1-09/24/10                       7

## **CERTIFICATE OF SERVICE**

     I hereby certify that I caused a true and correct copy of the foregoing document to be filed via the Court's ECF system and served via electronic transmission through the Court's ECF system on the attached Service List on this 8th day of March, 2011.

                                                                       /s/ Brian M. Graham

## SERVICE LIST

Brian A. Audette, David M Neff on behalf of Trustee Patrick Collins
baudette@perkinscoie.com
nsaldinger@perkinscoie.com
dneff@perkinscoie.com

David Audley on behalf of Creditor Harris N.A.
audley@chapman.com
benz@chapman.com

Paige E Barr on behalf of Creditor Grace Johnson
paige.barr@kattenlaw.com

Jeff Marwil, Bianca Chapman, Marc E Rosenthal, Jeremy Stillings on behalf of Trustee Jeff Marwil
bchapman@proskauer.com
jmarwil@proskauer.com
mrosenthal@proskauer.com
jstillings@proskauer.com
rrice@proskauer.com

Barry A Chatz, Miriam R. Stein on behalf of Debtor Life Fund 5.1, LLC
bachatz@arnstein.com
mlgesas@arnstein.com
blsutton@arnstein.com
lcsolomon@arnstein.com
mrstein@arnstein.com
 jbmedziak@arnstein.com

Michael J Durrschmidt on behalf of Creditor David Nystrom
mdurrschmidt@hirschwest.com,
bhowell@hirschwest.com
tjimenez@hirschwest.com
marsch500@gmail.com

Michael M. Eidelman on behalf of Interested Party Eric Boutte, as Trustee for the AB Revocable Living Trust
meidelman@vedderprice.com
ecf-docket@vedderprice.com

William T. Neary, Richard C Friedman on behalf of U.S. Trustee William Neary
USTPRegion11.es.ecf@usdoj.gov
richard.c.friedman@usdoj.gov

Arlene N Gelman on behalf of Interested Party Eric Boutte, as Trustee for the AB Revocable Living Trust
agelman@vedderprice.com

Emily S. Gottlieb on behalf of Other Prof. The Garden City Group, Inc.
emily_gottlieb@gardencitygroup.com          paul.kinealy@gardencitygroup.com
PACERTeam@gardencitygroup.com
lauren.granger@gardencitygroup.com
brian.karpuk@gardencitygroup.com
heather.montgomery@gardencitygroup.com

Gordon E. Gouveia on behalf of Creditor Harry and Adela Parlette
ggouveia@shawgussis.com

160300.1-09/24/10                                       9

David S Gragg on behalf of Creditor Bryant Truitt
dgragg@langleybanack.com

Daniel T. Graham on behalf of Creditor Mark Self
dgraham@clarkhill.com

David E Grochocinski on behalf of Creditor Mary Rybarzyk
lawyers@ggl-law.com
lawyers@ggl-law.com

Erin E Jones on behalf of Creditor Grace Johnson
erin@jonesmorris.com

Mark E Leipold on behalf of Creditor Betty Willis
mleipold@gouldratner.com
stamssot@gouldratner.com
hmartinez@gouldratner.com

Kevin H Morse on behalf of blank A & O Resource Management, LLC
khmorse@arnstein.com

E. Stuart Phillips on behalf of Interested Party The Texas State Securities Board
stuart.phillips@oag.state.tx.us

Jeffrey M Schwartz on behalf of Interested Party John Hancock Life Insurance Company (U.S.A.)
jeffrey.schwartz@dbr.com
bertha.serrano@dbr.com