**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LIFE FUND 5.1, LLC, *et al.,*[1] | ) | Case No. 09 B 32672 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | **Hearing Date: March 12, 2012** |
| | ) | **Hearing Time: 9:30 a.m.** |
| | ) | **Objection Deadline: March 9, 2012** |

**TO:  THE PARTIES ON THE ATTACHED SERVICE LIST**

**NOTICE OF HEARING ON SIXTH INTERIM AND FINAL APPLICATION OF
PROSKAUER ROSE LLP, COUNSEL TO THE TRUSTEE, FOR ALLOWANCE OF
COMPENSATION FOR  SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES**

  **PLEASE TAKE NOTICE** that on **March 12, 2012, at 9:30 a.m.**, or as soon thereafter

as counsel may be heard, the undersigned shall appear before the Honorable A. Benjamin

Goldgar, Judge for the United States Bankruptcy Court for the Northern District of Illinois,

Eastern Division, in Courtroom 613 of the Dirksen Federal Building, 219 S. Dearborn Street,

Chicago, Illinois, 60604, or any other Judge who may be sitting in his place and stead, and then

and there present for hearing the *Sixth Interim and Final Application of Proskauer Rose LLP,*

*Counsel to the Trustee, for Allowance of Compensation for Services Rendered and*

*Reimbursement of Expenses* (the "Application"), a copy of which is enclosed herewith and

hereby served upon you.

---

[1]  The Debtors in the cases are: (1) Life Fund 5.1, LLC; (2) Life Fund 5.2, LLC; (3) A&O Life Fund, LLC; (4) A&O
Resource Management, Ltd.; (5) A&O Bonded Life Settlements, LLC; (6) A&O Bonded Life Assets, LLC; and
(7) Houston Tanglewood Partners, LLC.

**PLEASE TAKE FURTHER NOTICE** that all objections to the Application must be in writing and filed with the Bankruptcy Court and served on undersigned counsel to the Trustee and the office of the United States Trustee no later than **March 9, 2012**.

Dated: February 17, 2012                    Respectfully submitted,

                                             PROSKAUER ROSE LLP

                                             */s/ Jeremy T. Stillings*

                                             Jeremy T. Stillings (ARDC# 06279868)
                                             PROSKAUER ROSE LLP
                                             70 West Madison, Suite 3800
                                             Chicago, Illinois 60602-4342
                                             (312) 962-3550, (312) 962-3551 (Fax)

                                             *Counsel to the Trustee*

1124/51043-001 current/27051958v2

## CERTIFICATE OF SERVICE

I, Jeremy T. Stillings, an attorney, hereby certify that on February 17, 2012, I caused copies of the foregoing **Notice of Hearing** and the following **Sixth Interim and Final Application of Proskauer Rose LLP, Counsel to the Trustee, for Allowance of Compensation for Services Rendered and Reimbursement of Expenses** to be served upon those parties on the attached service list in the manner indicated therein.

Dated: February 17, 2012

By: _/s/ Jeremy T. Stillings_

| Served Via Court ECF System | |
|---|---|
| OFFICE OF THE US TRUSTEE<br>Richard C. Friedman<br>Sandra Rasnak<br>219 S. Dearborn St.<br>Room 873<br>Chicago, IL 60604-1702 | PERKINS COIE LLP<br>Brian A. Audette<br>David M. Neff<br>John M. Christian<br>131 S. Dearborn St.<br>Suite 1700<br>Chicago, IL 60603 |
| LANGLEY & BANACK INC.<br>David S. Gragg<br>Trinity Plaza II, 9th Floor<br>745 E. Mulberry<br>San Antonio, TX 78212-3166 | ARNSTEIN & LEHR, LLP<br>Michael Gesas<br>Miriam Stein<br>Barry Chatz<br>Kevin Morse<br>120 South Riverside Plaza<br>Suite 1200<br>Chicago, IL 60606-3910 |
| CHAPMAN & CUTLER LLP<br>David Audley<br>Carly Jones<br>111 W. Monroe<br>Suite 1600<br>Chicago, IL 60603 | FUNKHOUSER VEGOSEN LIEBMAN &<br>DUNN, LTD<br>Daniel Graham<br>Neil Rosenbaum<br>55 W. Monroe St.<br>Suite 2300<br>Chicago, IL 60603 |

| Served Via Court ECF System | |
|---|---|
| GOULD & RATNER LLP<br>Mark E. Leipold<br>222 N. LaSalle St.<br>Suite 800<br>Chicago, IL 60601 | GROCHOCINSKI, GROCHOCINSKI &<br>LLOYD, LTD.<br>David E. Grochocinski<br>Ariane Holtschlag<br>1900 Ravinia Place<br>Orland Park, IL 60462 |
| HIRSCH & WESTHEIMER, P.C.<br>Michael J. Durrschmidt<br>Bank of America Center<br>25th Floor<br>700 Louisiana<br>Houston, TX 77002 | JOHNSON, TRENT, WEST & TAYLOR,<br>LLP<br>Lori Hood<br>Deborah Fritsche<br>919 Milam<br>Suite 170<br>Houtston, TX 77002 |
| JONES, MORRIS, LLP<br>Erin E. Jones<br>2700 Post Oak<br>Suite 1120<br>Houston, TX 77056 | KATTEN MUCHIN ROSENMAN LLP<br>Paige E. Barr<br>525 W. Monroe St.<br>Chicago, IL 60661 |
| OFFICE OF THE TEXAS ATTORNEY<br>GENERAL<br>Edith Stuart Phillips<br>Bankruptcy & Collection Division<br>P.O. Box 12548, MC-008<br>Austin, TX 78711 | SHAW GUSSIS FISHMAN<br>Gordon Gouveia<br>321 N. Clark<br>Suite 800<br>Chicago, IL 60654 |
| SMITH AMUNDSEN LLC<br>Brian M. Graham<br>Ean L. Kryska<br>Bryan Minier<br>150 N. Michigan Ave.<br>Suite 3300<br>Chicago, IL 60601 | VEDDER PRICE<br>Michael Eidelman<br>Arlene Gelman<br>222 N. LaSalle St.<br>Suite 2600<br>Chicago, IL 60601 |
| DRINKER BIDDLE & REATH LLP<br>Jeffrey M. Schwartz<br>Lionel Weaver<br>191 N. Wacker Dr., Ste. 3700<br>Chicago, Illinois  60606-1698 | |

| Served Via United States First Class Mail | |
|---|---|
| LENTZ & LITTLE, PA<br>William J. Little, Jr.<br>2012 23rd Ave.<br>Gulfport, Mississippi 39501 | Arturo C. Sapida<br>81870 Mountain View Lane<br>LaQunita, CA 92253-7610 |
| BLALOCK, WALTERS, HELD &<br>JOHNSON, P.A.<br>Mary Fabre Levine<br>802 11th Street West<br>Bradenton, FL 34205 | GIBBS & BRUNS LLP<br>Ashley McKeand<br>1100 Louisiana<br>Suite 5300<br>Houston, TX 77002 |
| BRACEWELL & GIULIANI LLP<br>Dean Tillostson<br>Tony Visage<br>711 Louisiana Street<br>Suite 2300<br>Houston, TX 77002 | FORIZS & DOGALI, P.A.<br>Zala Forizs<br>4301 Anchor Plaza Pkwy<br>Suite 300<br>Tampa, FL 33634 |
| GERSTNER & GERSTNER<br>J.Gerstner<br>M. Gerstner<br>Attorney For Nancy J. Groppi<br>53 W. Jackson Blvd.<br>Suite 1538<br>CHICAGO, IL 60604 | HAL F. MORRIS<br>Assistant Attorney General<br>Texas Attorney General's Office<br>P.O. BOX 12548, MC-008<br>Austin, TX 78711-2548 |
| IDEAL SETTLEMENTS CORP<br>Robert Taurosa, Agent<br>Or Other Officer Or Managing Agent<br>3401 Shoreline Drive<br>Allenwood, NJ 08720 | JACKSON WALKER LLP<br>Janet Douvas Chafin<br>1401 McKinney<br>Suite 1900<br>Houston, TX 77010 |

5

| Served Via United States First Class Mail | |
|---|---|
| Nancy J. Groppi<br>5837 Electric Avenue<br>Berkeley, IL 60163-1522 | US SECURITIES & EXCHANGE COMM.<br>Toby Galloway<br>Fort Worth Regional Office<br>801 Cherry St.<br>19th Floor<br>Fort Worth, TX 76102 |
| WALDRON & SCHNEIDER, LLP<br>Marc H. Schneider<br>Attorney to Troy Broussard & Ivo Dabelic<br>University Park 15150 Middlebrook Drive<br>Houston, TX 77058 | Patricia A. Navin<br>32 Mill Road<br>Hampton, NH 03842 |
| PHELAN HALLINAN & SCHMIEG, LLP<br>Judith T. Romano<br>1617 John F. Kennedy Boulevard<br>Suite 1400<br>Philadelphia, PA 19103 | PROVIDENT CAPITAL INDEMNITY LTD<br>Minor Vargas Calvo<br>Desarrollos Comerciales Ronim,SA<br>Oficinas Ejecutivas San Rafael<br>San Rafael-Heredia, Costa Rica |
| PROVIDENT CAPITAL INDEMNITY LTD<br>C/O Texas Secretary of State<br>as Agent For Service<br>P.O. Box 12887<br>Austin, TX 78711-2887 | Russell E. Mackert<br>5555 West Loop South<br>Suite 605<br>Houston, TX 77401 |
| Sumner Kai<br>11911 Pine Belt Dr.<br>Cypress, TX 77429 | Thomas G. Ferrell<br>3006 Carrie Cove Ct.<br>Spring, TX 77386 |
| THOMPSON & KNIGHT LLP<br>J. Brannon<br>K. Richter<br>1722 Routh St.<br>Suite 1500<br>DALLAS, TX 75201 | CLARK HILL PLC<br>Daniel T. Graham<br>150 N. Michigan Ave.<br>Suite 2700<br>Chicago, IL 60601 |
| Edward D. Hellekson<br>6889 Clearwater Rd. #104<br>Baxter, MN 56425 | Gerald J. Milliken Living Trust<br>c/o Gerald J. Milliken<br>2314 Central Blvd.<br>Merrick, NY 11566-3719 |

1124/51043-001 current/27051958v2

| Served Via United States First Class Mail | |
|---|---|
| John E. Spalding & Laura H. Spalding<br>JTWROS<br>1561 Kirby Drive<br>Houston, TX 77019 | Dan Pascal Vincent<br>3400 Travis St.<br>Houston, TX 77002 |
| Linda M. Cox<br>15827 Mesa Gardens Drive<br>Houston, TX 77095 | Bonnie E. Bryant<br>951 Armour Rd.<br>Oconomowoc, WI 53066-3935 |
| Marilyn T. Wasson<br>921 E. Manzanita Dr.<br>Union, WA 98592-9704 | Alan Nordby<br>114 Camargo Lane<br>Pasco, WA 99301-6114 |

1124/51043-001 current/27051958v2

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LIFE FUND 5.1, LLC, *et al.,*[1] | ) | Case No. 09 B 32672 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | **Hearing Date: March 12, 2012** |
| | ) | **Hearing Time: 9:30 a.m.** |
| | ) | **Objection Deadline: March 9, 2012** |

**COVER SHEET TO SIXTH INTERIM AND FINAL APPLICATION OF PROSKAUER
ROSE LLP, COUNSEL TO THE TRUSTEE, FOR ALLOWANCE OF COMPENSATION
FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES**

Name of Applicant:                    Proskauer Rose LLP

Authorized to Provide
Professional Services to:             Jeff Marwil, Chapter 11 Trustee

Date of Order Authorizing Retention:  March 17, 2010, effective as of March 8, 2010

**Sixth Interim Period:**

    Period for Which Compensation
    is Sought:                        September 1, 2011 through January 27, 2012

    Amount of Fees Sought
    for Interim Period:               $231,920.50

    Amount of Expenses Sought
    for Interim Period:               $412.02

**Final Period:**

    Period for Which Compensation
    is Sought:                        March 8, 2010 through January 27, 2012

    Amount of Fees Sought
    for Final Application Period:     $1,800,503.03

---

[1] The Debtors in the cases are: (1) Life Fund 5.1, LLC; (2) Life Fund 5.2, LLC; (3) A&O Life Fund, LLC; (4) A&O Resource Management, Ltd.; (5) A&O Bonded Life Settlements, LLC; (6) A&O Bonded Life Assets, LLC; and (7) Houston Tanglewood Partners, LLC.

Amount of Expenses Sought
for Final Application Period:          $11,265.80

This is an:  ___X___  interim and a __X____  final application.

**Previous Interim Fee Applications:**

| Date Filed | Period Covered | Total Requested | Total Allowed | Total Denied | Amount Paid | Holdback |
|---|---|---|---|---|---|---|
| 10/1/2010 | 3/8/2010 to 8/31/2010 | $591,165.50 | $533,734.80 | $57,430.70 | $427,903.70 | $105,831.10 |
| 1/18/2011 | 9/1/2010 to 11/30/2010 | $317,223.07 | $265,043.40 | $52,179.67 | $212,034.72 | $53,008.68 |
| 4/15/2011 | 12/1/2011 to 2/28/2011 | $253,177.01 | $240,185.51 | $12,991.50 | $192,148.40 | $48,037.11 |
| 7/15/2011 | 3/1/2011 to 5/31/2011 | $233,287.53 | $231,152.28 | $2,135.25 | $185,144.03 | $46,008.25 |
| 9/2/2011 | 6/1/2011 to 8/31/2011 | $221,944.04 | $221,944.04 | $0.00 | $177,656.84 | $44,287.20 |
| | **3/8/2010 to 8/31/2011** | **$1,616,797.15** | **$1,492,060.03** | **$124,737.12** | **$1,194,887.69** | **$297,172.34** |

Dated:  February 17, 2012                    Respectfully submitted,

                                             */s/ Jeremy T. Stillings*
                                             Jeremy T. Stillings (#06279868)
                                             PROSKAUER ROSE LLP
                                             70  West Madison St., Suite 3800
                                             Chicago, IL  60602-4342
                                             312 962-3529
                                             312 962-3551 (facsimile)
                                             jstillings@proskauer.com

2

## Summary of Fees Requested During Sixth Interim Period

| Name | State and Date of Bar Admission | Hourly Rate$^2$ | Hours | Fees |
|---|---|---|---|---|
| **Partners** | | | | |
| Jeff Marwil | Illinois, 1986 | $895 | 6.5 | $5,817.50 |
| | | $975 | 5.8 | $5,655.00 |
| Marc Rosenthal | Illinois, 1990 | $615 | 3.1 | $1,906.50 |
| Peter Young | Illinois, 2002 | $800 | 0.3 | $240.00 |
| **Associates** | | | | |
| Jeremy Stillings | Illinois, 2003 | $675 | 74.8 | $50,490.00 |
| | | $700 | 42.6 | $29,820.00 |
| Brandon Levitan | Illinois, 2010 | $295 | 117.6 | $34,692.00 |
| | | $375 | 95.3 | $35,737.50 |
| Catherine Spector | Illinois, 2005 | $480 | 5.8 | $2,784.00 |
| | | $675 | 4.0 | $2,700.00 |
| **Paraprofessionals** | | | | |
| Melissa Hagan | N/A | $215 | 94.7 | $20,360.50 |
| | | $235 | 168.9 | $39,691.50 |
| Shannon Wysocki | N/A | $200 | 4.3 | $860.00 |
| | | $220 | 5.3 | $1,166.00 |
| **TOTAL** | | | **629.0** | **$231,920.50** |
| **BLENDED HOURLY RATE = $368.71/ HR** | | | | |

---

[2] Proskauer Rose LLP periodically adjusts its billing rates to reflect economic changes in the market in which it operates and/or the experience and ability of its professionals and paraprofessionals. During the period of the 6th Interim Application, the hourly rate of multiple timekeepers was adjusted upward. This adjustment was not specific to Proskauer's representation of the Trustee and applied to all matters on which the timekeepers worked.

3

## Summary of Fees Requested During Final Application Period

| Name | State and Date of Bar Admission | Hours | Fees |
|---|---|---|---|
| **Partners** | | | |
| Jeff Marwil | Illinois, 1986 | 156.6 | $140,621.00 |
| Marc Rosenthal | Illinois, 1990 | 169.6 | $102,232.50 |
| Alan Parnes | Massachusetts, 1994 | 16.6 | $15,770.00 |
| Matthew Queler | New Jersey, 1983 | 4.7 | $3,055.00 |
| Peter Marathas, Jr. | Massachusetts, 1994 | 1.3 | $799.50 |
| Peter Young | Illinois, 2003 | 0.3 | $240.00 |
| **Senior Counsel** | | | |
| Abraham Gutwein | New York, 1981 | 11.0 | $8,250.00 |
| **Associates** | | | |
| Jeremy Stillings | Illinois, 2003 | 1,013.1 | $593,362.50[1] |
| Brandon Levitan | Illinois, 2010 | 1,063.9 | $318,222.50 |
| Catherine Spector | Illinois, 2005 | 147.6 | $67,184.50 |
| Bianca Chapman | Illinois, 2007 | 129.9 | $49,342.50 |
| Neil Aggarwal | Illinois, 2010 | 88.1 | $25,559.50 |
| Justin Hinrich | New York, 2006 | 14.9 | $8,344.00 |
| Grayson Walter | Illinois, 2006 | 17.5 | $7,872.50 |
| Evan Citron | New York, 2008 | 6.8 | $3,604.00 |
| David Lewis | New York, 2002 | 4.0 | $2,500.00 |
| Daniel Berger | New York, 2011 | 7.7 | $2,271.50 |
| Calida Motley | New York, 2010 | 5.8 | $1,711.00 |
| Robyn Sterling | Illinois, 2006 | 1.7 | $731.00 |
| Sarah Krauss | New Jersey, 1993 | 0.5 | $310.00 |
| **Paraprofessionals** | | | |
| Melissa Hagan | N/A | 1,003.4 | $219,109.00 |
| Cassaundra Boyd | N/A | 2,121.6 | $197,114.00 |
| Renee Rice | N/A | 316.6 | $61,737.00 |

[1] Inclusive of amounts previously unreported in the First Interim Application and the Second Interim Application, as discussed and requested in the application attached hereto.

| Shannon Wysocki | N/A | 97.0 | $19,353.50 |
| Mia Fleming | N/A | 134.5 | $16,812.50 |
| Maurice Davis | N/A | 121.2 | $9,090.00 |
| **TOTAL** | | **6,656.2** | **$1,875,199.50** |
| **BLENDED HOURLY RATE $281.72** | | | |

### Summary of Expenses Sought for Reimbursement During 6th Interim Period

| TYPE OF EXPENSE | AMOUNT DISBURSED |
| --- | --- |
| Reproduction Costs and Services | $98.70 |
| Court Reporting Service | $106.25 |
| Long Distance Telephone | $3.14 |
| Postage | $9.92 |
| Messenger Delivery | $113.16 |
| PACER | $114.80 |
| Filing and Court Costs | $2.05 |
| Facsimile | $4.00 |
| Reimbursed Expenses | ($40.00) |
| **TOTAL** | **$412.02** |

1124/51043-001 current/27051958v2

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LIFE FUND 5.1, LLC, *et al.,*[1] | ) | Case No. 09 B 32672 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | **Hearing Date: March 12, 2012** |
| | ) | **Hearing Time: 9:30 a.m.** |
| | ) | **Objection Deadline: March 9, 2012** |

**SIXTH INTERIM AND FINAL APPLICATION OF PROSKAUER ROSE LLP,
COUNSEL TO THE TRUSTEE, FOR ALLOWANCE OF COMPENSATION
FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES**

Proskauer Rose LLP ("Proskauer"), counsel to Jeff Marwil, not individually, but solely in

his capacity as the elected chapter 11 trustee (the "Trustee") to the estates (the "Estates") of the

above-captioned debtors (collectively, the "Debtors"), pursuant to sections 105, 330 and 331 of

title 11 of the United States Code (11 U.S.C. §§ 101 *et. seq.*, the "Bankruptcy Code"), rules

2002(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rule

5082-1 of the Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court

for the Northern District of Illinois (the "Local Rules"), and this Court's interim compensation

procedures order entered in these cases on November 10, 2010, hereby submits this sixth interim

and final fee application (the "Application") for (1) interim allowance of compensation for

services rendered and reimbursement of expenses incurred for the period of September 1, 2011

through and including January 27, 2012 (the "Sixth Interim Period"), and (2) final allowance of

compensation for services rendered and reimbursement of expenses incurred for the period of

March 8, 2010 through and including January 27, 2012 (the "Final Application Period"), and

---

[1]  The Debtors in the cases are: (1) Life Fund 5.1, LLC; (2) Life Fund 5.2, LLC; (3) A&O Life Fund, LLC; (4) A&O Resource Management, Ltd.; (5) A&O Bonded Life Settlements, LLC; (6) A&O Bonded Life Assets, LLC; and (7) Houston Tanglewood Partners, LLC.

respectfully requests that this Court enter an order (i) allowing Proskauer (a) interim compensation in the amount of $231,920.50 for professional services rendered during the Sixth Interim Period, (b) $412.02 for ordinary and necessary expenses incurred during the Sixth Interim Period, (c) final compensation in the amount of $1,800,503.03 for professional services rendered during the Final Application Period, and (d) $11,265.80 for ordinary and necessary expenses incurred during the Final Application Period, and (ii) authorizing the Trustee to pay to Proskauer the difference between all amounts allowed to Proskauer for the Final Application Period and the total amount that Proskauer has received to date on account of fees and expenses previously allowed on an interim basis. In support of this Application, Proskauer respectfully states as follows:

## INTRODUCTION AND SUMMARY

1.      On January 27, 2012 (the "Effective Date"), the Chapter 11 Trustee's Second Amended Plan of Consolidation and Liquidation (the "Plan") became effective. The Plan consolidated the Estates for all purposes and transferred substantially all assets of the Estates to a liquidating trust (the "Trust") for administration and distribution to creditors of the Estates in accordance with the Plan. On the Effective Date, in excess of $4 million of cash was transferred from the Estates to the Trust. The Trustee is also the trustee of the Trust and expects to make an initial distribution to creditors in the first quarter of 2012, subject to the terms and conditions of the Trust Agreement (as defined in the Plan). As described below, since the Effective Date the Trustee has been instrumental in locating offshore assets that may accrue significantly to the benefit of creditors and lead to future additional, material distributions to creditors.

## COMMENCEMENT OF CASES,
## ELECTION OF THE TRUSTEE AND PROSKAUER'S RETENTION

2.      On September 2, 2009 (the "Petition Date"), each of the Debtors filed a voluntary

2

petition for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned chapter 11 cases (the "Chapter 11 Cases"). Through the Effective Date, the Chapter 11 Cases were administered jointly for procedural purposes only under the case name and number assigned to Debtor Life Fund 5.1, LLC. The Plan substantively consolidated the Chapter 11 Cases for all purposes.

3.      On September 16, 2009, this Court granted a motion of the office of the United States Trustee (the "United States Trustee") requesting appointment of a chapter 11 trustee under section 1104(a) of the Bankruptcy Code. On September 21, 2009, this Court approved the appointment of Patrick Collins as chapter 11 trustee. On March 8, 2010, after Mr. Marwil was elected Trustee by creditors of the Debtors, this Court entered an order certifying Mr. Marwil's election as Trustee.

4.      On March 17, 2010, this Court entered a final order authorizing the employment of Proskauer as counsel to the Trustee, effective retroactively to March 8, 2010.

**THE DEBTORS, THE TRUSTEE, AND THE CHAPTER 11 BANKRUPTCY CASES**

5.      Prior to the Petition Date, the Debtors purportedly operated in the "life settlement" industry, soliciting funds from individual investors in order to use such funds to acquire ownership of or beneficial interests in life insurance policies ("Policies") on third party insureds. As part of this purported business model, the Debtors also acquired bonds issued by Provident Capital Indemnity, Ltd. ("PCI"). Each PCI bond matured on a fixed date and in an amount equal to the death benefit of a Policy with which it was connected. The Debtors' purported business model was to: (a) borrow money from investors to finance the Debtors purchase of Policies and PCI bonds; (b) purchase and maintain Policies and PCI bonds using investor dollars; (c) collect either death benefits (if there was no PCI bond on a Policy or if the

3

Policy matured prior to the maturity of the PCI bond) or proceeds of the PCI bonds (if the PCI bond matured before maturity of the Policy on which it was issued); (d) use such proceeds to repay investors the principal amount of their investment plus a promised investment premium; and (e) keep the difference between the proceeds collected and investor funds repaid as profit.

6.      It is now apparent that for some time leading up to the Petition Date, the Debtors' business was a sham. Some principals of the Debtors have admitted to using the Debtors to commit, among others, crimes of fraud and money laundering and have pled guilty to criminal charges in connection with such criminal activity. Some principals of the Debtors have been convicted by the United States Department of Justice (the "<u>DOJ</u>"), acting through the Office of the Unites States Attorney for the Eastern District of Virginia (the "<u>US Attorney</u>"), with crimes related to such activities.  Although some mystery surrounds exactly when and how the Debtors became unable to continue their enterprise, as of the Petition Date the Debtors apparently had no active management, very few hard assets, and were insolvent.

7.      Soon after the Petition Date, the United States Trustee sought and obtained the appointment of a chapter 11 trustee. Thereafter, Mr. Marwil was elected Trustee by creditors of the Debtors.

## OVERVIEW OF SERVICES
## PROVIDED BY PROSKAUER DURING THE FINAL APPLICATION PERIOD.

8.      During the course of the Chapter 11 Cases, Proskauer has provided comprehensive advice and guidance to the Trustee regarding all aspects of the Chapter 11 Cases. At the outset of the Trustee's engagement, Proskauer was instrumental in assuming control of the Estates and helping the Trustee to organize and understand the Debtors' records. Predecessor Trustee Collins and his professionals had begun this process, but the state of disarray of the Debtor's records (which may well have been intentional, to help conceal crimes committed by

4

the Debtors' principals) was such that Proskauer invested hundreds of additional professional hours in reviewing, categorizing and organizing information in order to administer the Estates. These efforts later proved invaluable, as Proskauer has used this information to, among other things: (a) provide information to myriad individuals and government agencies in support of related claims processes, investigations, and suits; (b) reconcile claims against the Estates; (c) bring and prosecute lawsuits on behalf of the Estates; and (d) otherwise administer the Estates in an efficient manner.

9.      Proskauer's efforts to organize the Debtor's files were critical to the Trustee's ability to maintain Policies until they were reviewed and administered by the Trustee. Many Policies required ongoing payments of premiums or related costs and monthly tracking. Moreover, to preserve Policies and in further assistance to the Trustee in administering the Estates, Proskauer brought multiple suits for turnover or related relief against (a) insurance companies that issued the Policies and (b) trusts in which certain Policies were held. These suits were necessary for the Trustee to be able to obtain information on Policies held in such trusts and otherwise maintain the Policies for the benefit of the Estates until such Policies were sold or allowed to lapse.[2]

10.      After securing control over all of the Policies, Proskauer worked with the Trustee to design, obtain Court approval of, and implement a sophisticated procedure to evaluate, market and sell Policies in a manner that allowed the Trustee to respond to market forces in real time (to maximize the sale value of the Policies) while providing parties in interest with a high degree of transparency. The evaluation component of the marketing and sale process provided the Trustee with a baseline expected value (that accounted for carry costs and expected time to maturity for

---

[2] As explained in previous pleadings to this Court, Policies were allowed to lapse to prevent the incurrence of additional fees and expenses where no return was likely.

Policies) against which the Trustee was able to compare offers to purchase Policies (individually and in groups). The result of this sale process was a series of Policy sales that resulted in more than $4 million in proceeds for the Estates (thus preventing the Estates from incurring carry costs on the Policies that were projected to (on a net basis) significantly exceed the Estates' cash reserves).

11.      Proskauer also assisted the Trustee in monetizing assets of the Estates other than the Policies. First, Proskauer worked diligently with PCI to secure partial payment on account of settlement agreements PCI executed with the Trustee. PCI was delinquent in many of the Payments that it made to the Estates (prior to defaulting on all of its obligations to the Estates). The Trustee and Proskauer were able to secure value for the Estates by (prior to the time when PCI defaulted on all of its obligations to the Estates) securing a guaranty of payment from PCI in the form of a Policy that, by previous agreement between PCI and the Estates, otherwise would have been turned over to PCI. Second, after PCI went into receivership, Proskauer worked with counsel to the PCI receiver to determine the Estates' claims against the PCI estate. Third, Proskauer was heavily involved in negotiations with counsel to the AB Revocable Trust, which asserts more than $100 million of claims against the Estates arising from arbitration proceedings related to contested ownership of certain Policies. Resolution of these claims (discussed in the Disclosure Statement) likely will yield additional funds for creditors (in addition to the claims being withdrawn in their entirety). Fourth, Proskauer investigated certain claims and causes of action of the Estates against the chapter 7 estates of Steven Colson and Prestige Title, Inc., former escrow agent to the Debtors, and resolved such claims in a manner that resulted in a $4.6 million claim against the Colson estates. That claim currently is held by the Trust for the benefit of creditors.

6

12.     On behalf of the Trustee, Proskauer prosecuted certain claims against former principals and insiders of the Debtors. The ultimate result of this litigation against the individual defendants is tens of millions of dollars in judgments that will accrue to the benefit of the Trust (to the extent they are ever satisfied, in whole or in part).

13.     Proskauer also assisted by reviewing, reconciling, and resolving (by stipulation or objection with the Court) more than 800 claims against the Debtors. Proskauer filed seven omnibus objections (objecting to hundreds of claims) and consensually resolved hundreds more claims via stipulation, and thus without the cost and expense associated with a formal objection process. The result of this claims reconciliation process is that the Trustee is in a position to make a substantial distribution to creditors.

## POST-CONFIRMATION ACTIVITIES

14.     In late 2011 the Trustee was contacted by Interfor, Inc. ("Interfor"), a recovery agent it retained in the Chapter 11 Cases on a contingent fee basis to pursue outside of the US assets that may benefit creditors of the Estates. Interfor informed the Trustee that it had located offshore assets that it believed it may be able to secure. Due to the nature and location of the assets, the Trustee quickly coordinated with the PCI receiver and the US Attorney. In short order, Interfor had the support of all of the parties it required to begin the process of making a claim against the assets located in the hopes of domesticating them for the benefit of, among others, creditors of the Debtor. Although recovery is far from certain at this point, the assets located are in excess of $30 million and it is likely that a significant portion of any recovery on account of such assets would flow to the Trust for the benefit of creditors.

7

## PROSKAUER'S PRIOR INTERIM REQUESTS

15.     On October 1, 2010, Proskauer filed the First Application of Proskauer Rose LLP, Counsel to the Trustee, for Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the period beginning March 8, 2010 and ending August 31, 2010 (the "First Interim Application"). In the First Interim Application, Proskauer requested $565,069.00 in fees and reimbursement of $26,096.50 in expenses incurred. On October 28, 2010, the Court entered an order granting in part the First Interim Application, awarding to Proskauer on an interim basis $529,160.50 in fees and $4,574.30 in expenses, and authorizing and directing the Trustee to pay to Proskauer $427,903.70. Accordingly, in accordance with orders of the Court, $105,831.10 in fees approved by this Court on account of the First Interim Application have been withheld from Proskauer.

16.     On January 18, 2011, Proskauer filed the Second Interim Application of Proskauer Rose LLP, Counsel to the Trustee, for Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the period beginning September 1, 2010 and ending November 30, 2010 (as amended, the "Second Interim Application"). A copy of the Second Interim Application is attached hereto as **Exhibit 3**. In the Second Interim Application, Proskauer requested $309,162.00 in fees and reimbursement of $8,061.07 in expenses incurred. On March 16, 2011, the Court entered an order granting in part the Second Interim Application, awarding to Proskauer on an interim basis $262,079.50 in fees and $2,963.90 in expenses, and authorizing and directing the Trustee to pay to Proskauer $212,034.72. Accordingly, in accordance with orders of the Court, $53,008.68 in fees approved by this Court on account of the Second Interim Application have been withheld from Proskauer.

8

17.     On April 15, 2011, Proskauer filed the Third Interim Application of Proskauer Rose LLP, Counsel to the Trustee, for Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the period beginning December 1, 2010 and ending February 28, 2011 (the "Third Interim Application"). A copy of the Third Interim Application is attached hereto as **Exhibit 4**. In the Third Interim Application, Proskauer requested $251,520.50 in fees and reimbursement of $1,656.51 in expenses incurred. On May 25, 2011, the Court entered an order granting in part the Third Interim Application, awarding to Proskauer on an interim basis $238,529.00 in fees and $1,656.51 in expenses, and authorizing and directing the Trustee to pay to Proskauer $192,148.40. Accordingly, in accordance with orders of the Court, $48,037.11 in fees approved by this Court on account of the Third Interim Application have been withheld from Proskauer.

18.     On July 15, 2011, Proskauer filed the Fourth Application of Proskauer Rose LLP, Counsel to the Trustee, for Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the period beginning March 1, 2011 and ending May 31, 2011 (the "Fourth Interim Application"). In the Fourth Interim Application, Proskauer requested $232,176.50 in fees and reimbursement of $1,111.03 in expenses incurred. On August 24, 2011, the Court entered an order granting in part the Fourth Interim Application and awarding to Proskauer on an interim basis $230,041.25 in fees and $1,111.03 in expenses. In accordance with orders of this Court, Proskauer has collected $185,144.03 on account of amounts allowed under the Fourth Interim Application. Accordingly, in accordance with orders of the Court, $46,008.25 in fees approved by this Court on account of the Fourth Interim Application have been withheld from Proskauer.

19.     On September 6, 2011, Proskauer filed the Fifth Application of Proskauer Rose LLP, Counsel to the Trustee, for Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the period beginning June 1, 2011 and ending August 31, 2011 (the "Fifth Interim Application" and, with the First Interim Application, the Second Interim Application, the Third Interim Application, and the Fourth Interim Application, the "Previous Interim Applications"). In the Fifth Interim Application, Proskauer requested $221,436.00 in fees and reimbursement of $508.04 in expenses incurred. On October 28, 2010, the Court entered an order granting in part the Fifth Interim Application, awarding to Proskauer on an interim basis $221,436.00 in fees and $508.04 in expenses, and authorizing and directing the Trustee to pay to Proskauer $177,656.84. Accordingly, in accordance with orders of the Court, $44,287.20 in fees approved by this Court on account of the Fifth Interim Application have been withheld from Proskauer.

20.     On account of its previous interim fee applications, and in accordance with orders previously entered by this Court, $297,172.34 in fees approved by this Court on an interim basis have been held back and not paid to Proskauer. Upon request of any party in interest, Proskauer will provide copies of any of the Previous Interim Applications.

## REQUEST FOR FEES NOT ALLOWED UNDER SECOND INTERIM APPLICATION

21.     In its order granting in part and denying in part the Second Interim Application, the Court disallowed as "unnecessary, no benefit" to the Estates fees in the amount of $12,607.50 directly related to the preparation of a motion to substantively consolidate the Estates. At the hearing on the Second Interim Application, the Court informed Proskauer that such fees were disallowed because no motion to consolidate the Estates had been presented to the Court.

10

22.     The Plan substantively consolidated the Estates. On December 2, 2011, Proskauer filed on behalf of the Trustee the Memorandum of Law in Support of Confirmation of Chapter 11 Trustee's Second Amended Plan of Consolidation and Liquidation (the "<u>Confirmation Brief</u>") and related Declaration of Chapter 11 Trustee Jeff Marwil in Support of Confirmation of the Second Amended Plan of Consolidation and Liquidation Dated as of October 14, 2011 (the "<u>Confirmation Affidavit</u>"). The Trustee filed the Confirmation Brief and the Confirmation Affidavit to provide the Court legal and factual bases to confirm the Plan.

23.     The Confirmation Brief at Section III provided detailed legal analysis and legal support for substantive consolidation of the Estates, which was a key element of the Plan. Proskauer drafted Section III of the Confirmation Brief based on the work product for which fees were disallowed in the Second Interim Application in the amount of $12,607.50. This work product, for which related legal fees were disallowed, prevented Proskauer from having to research the issue of substantive consolidation in connection with confirmation of the Plan. Section D and Attachments 1 - 15 of the Confirmation Affidavit document facts in support of substantive consolidation of the Estates.

24.     Proskauer requests that the Court allow Proskauer $12,607.50 in fees previously disallowed because they directly related to researching substantive consolidation of the Estates, on the basis that such fees were appropriate and provided a direct benefit to the Estates.

## REQUEST FOR ALLOWANCE OF FEES
## INCURRED IN PRIOR INTERIM PERIODS BUT NOT PREVIOUSLY SUBMITTED

25.     During the time period from October 2010 through February 2011, timekeeper Jeremy Stillings expended 109.2 hours having a value of $63,915.00 in nine categories that Proskauer used to record time devoted to the Chapter 11 Cases (the "<u>Unrequested Fees</u>"). Due to timekeeper and administrative oversight, these time entries were not included in the invoices

11

generated for the appropriate billing periods and, as a result, were not included in the appropriate Previous Interim Applications. An invoice detailing the time entries that comprise the Unrequested Fees is attached hereto as **Exhibit 2** and descriptions of the services provided by Mr. Stillings are included below in paragraphs 26 through 44. By this Application, Proskauer seeks allowance and payment of the Unrequested Fees.

### NATURE OF SERVICES PERFORMED BY PROSKAUER ON BEHALF OF THE TRUSTEE DURING THE SIXTH INTERIM PERIOD AND IN THE INVOICES DETAILING THE UNREQUESTED FEES

26.     In this Application, Proskauer seeks payment of amounts previously held back, the amount previously disallowed and discussed above, and fees and expenses incurred during the Sixth Interim Period. Proskauer's invoice for professional services rendered to and expenses that Proskauer incurred on behalf of the Trustee during the Sixth Interim Period is attached hereto as **Exhibit 1**.

27.     During the Sixth Interim Period, Proskauer tracked services rendered to the Trustee using the following categories:

| CATEGORY | HOURS | FEES |
|---|---|---|
| General Case Administration | 60.7 | $19,824.00 |
| Asset Analysis & Recovery | 71.8 | $22,998.50 |
| Adversary Pleadings and Litigation | 145.4 | $47,709.00 |
| Plan and Disclosure Statement | 190.0 | $92,131.00 |
| Claims Administration and Objections | 113.8 | $33,664.50 |
| Fee and Employment Applications | 14.0 | $5,957.00 |
| Investor Communications | 10.4 | $3,829.50 |
| Third Party Discovery Responses | 22.9 | $5,807.00 |
| **TOTAL** | **629.0** | **$231,920.50** |

## A.     General Case Administration.

28.     During the Sixth Interim Period, Proskauer expended 60.7 hours having a value of $19,824.00 in connection with this category. Services rendered by Proskauer in this category

12

include, among other things, the following: (a) communicating with the DOJ, the Texas State Securities Board, the office of the US Attorney, and other federal and state agencies regarding the Chapter 11 Cases, the Debtors' prepetition activities, and the Plan; (b) preparing and maintaining in conjunction with Garden City Group ("GCG", the Debtors' notice and claims agent) contact, notice, service and other administrative lists; (c) attending hearings on the Chapter 11 Cases not wholly allocable to a more specific category described below; (d) communicating with the Trustee and others regarding administrative matters; (e) preparing monthly operating reports and quarterly reports required by the United States Trustee and this Court to administer the Chapter 11 Cases; (f) researching, preparing, filing, serving (when more cost-effective than for GCG to do so) and/or presenting to the Court pleadings and other items that do not fall into a more specific category identified above; and (g) tracking the docket of the PCI receivership case, of which counsel to the Trustee does not otherwise receive notice. The following chart summarizes the total amount of time entered by each Proskauer timekeeper for services rendered in this billing category during the Sixth Interim Period, as well as the corresponding dollar value of those services:

| TIMEKEEPER | HOURS | FEES |
|---|---|---|
| Jeff Marwil | 0.5 | $463.50 |
| Jeremy Stillings | 8.2 | $5,542.50 |
| Brandon Levitan | 15.9 | $5,522.50 |
| Catherine Spector | 0.3 | $202.50 |
| Melissa Hagan | 35.8 | $8,093.00 |
| TOTAL | 60.7 | $19,824.00 |

29.     During the time covered by the Second Interim Application and the Third Interim Application, timekeeper Stillings expended 11.5 hours having a value of $6,750.00 in connection with this category. Services rendered by Mr. Stillings during this time include communicating with other Proskauer timekeepers regarding preparation of monthly operating and other reports,

13

reviewing statements filed in criminal proceedings of Russell Mackert for relevance to the Chapter 11 Cases, and reviewing the Trustee's bank statements in light of regulations coming into effect as a result of new federal legislation.

**B.      Asset Analysis and Recovery.**

30.      During the Sixth Interim Period, Proskauer expended 75.3 hours having a value of $26,379.00 in connection with this category.  Services rendered by Proskauer in this category include, among other things, the following: (a) analyzing and researching potential claims and causes of action for the benefit of the Estates and creditors of the Estates, including related to offshore assets located by Interfor and related to the Trustee's ability to pursue brokers for commissions on sales to creditors of the Estates; (b) communicating with Interfor and counsel to PCI regarding offshore assets and the ability to recover such assets for the benefit of creditors; and (c) communicating with counsel to the PCI receivership estate regarding liquidating the amount of the Trust's claim against the PCI receivership estate.  The following chart summarizes the total amount of time entered by each Proskauer timekeeper for services rendered in this billing category during the Sixth Interim Period, as well as the corresponding dollar value of those services:

| TIMEKEEPER | HOURS | FEES |
|---|---|---|
| Jeff Marwil | 3.0 | $2,901.00 |
| Marc Rosenthal | 0.9 | $553.50 |
| Jeremy Stillings | 7.5 | $5,210.00 |
| Brandon Levitan | 1.0 | $375.00 |
| Melissa Hagan | 59.4 | $13,959.00 |
| TOTAL | 71.8 | $22,998.50 |

31.      During the time covered by the Second Interim Application and the Third Interim Application, timekeeper Stillings expended 9.3 hours having a value of $5,415.00 in connection with this category. Services rendered by Mr. Stillings during this time include reviewing and

14

communicating with others regarding Policies held by the Estates, communicating with insurers

regarding administration of Policies, and communicating with principals of PCI regarding non-

payment of amounts due under settlement agreements and/or bonds securing Policies.

## C.    Adversary Proceedings and Litigation.

32.    During the Sixth Interim Period, Proskauer expended 145.4 hours having a value

of $47,709.00 in connection with this category.  Services rendered by Proskauer in this category

include, among other things, the following: (a) producing and obtaining documents regarding

potential claims against John Spalding and/or others; (b) obtaining final relief in the Estates'

adversary complaint against former principals of the Debtors and affiliates of the Debtors; and

(c) researching and outlining adversary complaints to subordinate claims of individuals involved

with the Debtors' prepetition operations.  The following chart summarizes the total amount of

time entered by each Proskauer timekeeper for services rendered in this billing category during

the Sixth Interim Period, as well as the corresponding dollar value of those services:

| TIMEKEEPER | HOURS | FEES |
|---|---|---|
| Marc Rosenthal | 2.2 | $1,353.00 |
| Jeremy Stillings | 10.6 | $7,240.00 |
| Catherine Spector | 9.4 | $5,233.50 |
| Brandon Levitan | 54.2 | $17,965.00 |
| Shannon Wysocki | 5.3 | $1,166.00 |
| Melissa Hagan | 63.7 | $14,751.50 |
| TOTAL | 145.4 | $47,709.00 |

33.    During the time covered by the Second Interim Application and the Third Interim

Application, timekeeper Stillings expended 35.1 hours having a value of $20,865.00 in

connection with this category. Services rendered by Mr. Stillings during this time include

communicating with other professionals of the Estates regarding responding to subpoena

requests of Christian Allmendinger, researching the ability of criminal defendants to successfully

15

assert protections under the Fifth Amendment to the Constitution in civil actions arising under the Bankruptcy Code, and reviewing and revising a motion for entry of default judgment against certain parties to adversaries being prosecuted by the Trustee.

**D.    Plan and Disclosure Statement.**

34.    During the Sixth Interim Period, Proskauer expended 192.7 hours having a value of $94,691.50 in connection with this category.  These activities included, among other things, the following: (a) amending the Plan, Disclosure Statement, and exhibits thereto in response to objections by parties in interest and comments of the Bankruptcy Court; (b) obtaining Court approval of the Plan, including drafting and filing the Confirmation Brief and Confirmation Affidavit; and (c) making the Plan become effective. The following chart summarizes the total amount of time entered by each Proskauer timekeeper for services rendered in this billing category during the Sixth Interim Period, as well as the corresponding dollar value of those services:

| TIMEKEEPER | HOURS | FEES |
|---|---|---|
| Jeff Marwil | 7.8 | $7,181.00 |
| Jeremy Stillings | 75.2 | $51,525.00 |
| Brandon Levitan | 82.6 | $27,871.00 |
| Shannon Wysocki | 0.8 | $160.00 |
| Melissa Hagan | 23.6 | $5,394.00 |
| TOTAL | 190.0 | $92,131.00 |

35.    During the time covered by the Second Interim Application and the Third Interim Application, timekeeper Stillings expended 2.5 hours having a value of $1,500.00 considering and outlining the structure of the Plan and information necessary to be included in the disclosure statement to the Plan.

16

**E.      Claims Administration and Objections.**

36.      During the Sixth Interim Period, Proskauer expended 114.0 hours having a value of $33,843.50 in connection with this category. These activities included, among other things, the following: (a) prosecuting seven omnibus objections to claims; (b) prosecuting a motion to approve stipulations between the Trustee and creditors, which stipulations liquidated over 200 claims of creditors against the Estates; (c) liquidating other claims against the Estates via stipulations with creditors; and (d) amending the claims register accordingly. The following chart summarizes the total amount of time entered by each Proskauer timekeeper for services rendered in this billing category during the Sixth Interim Period, as well as the corresponding dollar value of those services:

| TIMEKEEPER | HOURS | FEES |
|---|---|---|
| Jeff Marwil | 0.3 | $268.50 |
| Peter Young | 0.3 | $240.00 |
| Jeremy Stillings | 10.6 | $7,157.50 |
| Brandon Levitan | 42.0 | $12,918.00 |
| Shannon Wysocki | 3.5 | $700.00 |
| Melissa Hagan | 57.1 | $12,380.50 |
| TOTAL | 113.8 | $33,664.50 |

37.      During the time covered by the Second Interim Application and the Third Interim Application, timekeeper Stillings expended 5.8 hours having a value of $3,382.50 in connection with this category. Services rendered by Mr. Stillings during this time include reviewing and commenting upon analyses of potential claims objections prepared by less experienced timekeepers at Proskauer and reviewing and revising (a) the forms of stipulations that would be used to reduce and allows claims without the necessity for filing an objection, and (b) a form of motion to approve such stipulations.

17

**F.      Fee and Employment Applications.**

38.      During the Sixth Interim Period, Proskauer expended 14.0 hours having a value of $5,957.00 in connection with this category. These activities included, among other things, the following: (a) drafting and prosecuting the Fifth Interim Application; (b) reviewing time entries in advance of drafting this Application; (c) facilitating review and payment of invoices of GCG; and (d) discussing with counsel to the predecessor Trustee the appropriate presentation and treatment of Trustee fees and related applications. The following chart summarizes the total amount of time entered by each Proskauer timekeeper for services rendered in this billing category during the Sixth Interim Period, as well as the corresponding dollar value of those service:

| TIMEKEEPER | HOURS | FEES |
|---|---|---|
| Jeff Marwil | 0.2 | $795.00 |
| Jeremy Stillings | 4.5 | $3,082.50 |
| Brandon Levitan | 5.7 | $1,905.50 |
| Melissa Hagan | 3.6 | $774.00 |
| TOTAL | 14.00 | $5,957.00 |

39.      During the time covered by the Second Interim Application and the Third Interim Application, timekeeper Stillings expended 16.7 hours having a value of $9,630.00 in connection with this category. Services rendered by Mr. Stillings during this time included: (a) drafting the First Interim Application; (b) reviewing and analyzing the fee application filed by counsel to predecessor trustee Patrick Collins; (c) discussing such application with counsel to creditors; and (d) drafting the interim compensation procedures adopted by the Court in the Chapter 11 Cases.

**G.      Investor Communications.**

40.      During the Sixth Interim Period, Proskauer expended 10.4 hours having a value of $3,829.50 in connection with this category. These activities included, among other things, the following: (a) communicating with individual creditors regarding the timing and payment of

18

their claims and general inquiries into the Chapter 11 Cases; (b) drafting updates to the website

maintained to communicate with parties in interest in the Chapter 11 Cases; and (c) otherwise

communicating with parties in interest in the Chapter 11 Cases. The following chart summarizes

the total amount of time entered by each Proskauer timekeeper for services rendered in this

billing category during the Sixth Interim Period, as well as the corresponding dollar value of

those services:

| TIMEKEEPER | HOURS | FEES |
|---|---|---|
| Jeff Marwil | 0.5 | $463.50 |
| Jeremy Stillings | 0.5 | $345.00 |
| Brandon Levitan | 8.8 | $2,892.00 |
| Melissa Hagan | 0.6 | $129.00 |
| TOTAL | 10.4 | $3,829.50 |

41.    During the time covered by the Second Interim Application and the Third Interim

Application, timekeeper Stillings expended 5.0 hours having a value of $2,910.00 in connection

with this category. Services rendered by Mr. Stillings during this time include communicating

with creditors regarding their claims against the Estates, discussing investor claims with

representatives of FINRA, and researching (in response to multiple investor inquiries regarding)

the Fraud Recovery Group.

**H.      Third Party Litigation / Discovery Requests.**

42.    During the Sixth Interim Period, Proskauer expended 22.9 hours having a value of

$5,807.00 in connection with this category. These activities included, among other things,

responding to multiple discovery requests from parties relating to litigation or claims not arising

under the Chapter 11 Cases and reviewing information potentially responsive to such requests

for privilege and relevance.  The following chart summarizes the total amount of time entered by

each Proskauer timekeeper for services rendered in this billing category during the Application

Period, as well as the corresponding dollar value of those services:

19

| TIMEKEEPER | HOURS | FEES |
|---|---|---|
| Jeremy Stillings | 0.3 | $207.50 |
| Catherine Spector | 0.1 | $48.00 |
| Brandon Levitan | 2.7 | $980.50 |
| Melissa Hagan | 19.8 | $4,571.00 |
| **TOTAL** | **22.9** | **5,807.00** |

43.     During the time covered by the Second Interim Application and the Third Interim Application, timekeeper Stillings expended 3.4 hours having a value of $2,040.00 in connection with this category. Services rendered by Mr. Stillings during this time include reviewing and commenting upon analyses of privacy laws potentially applicable to responses to information requests received from outside parties and reviewing historical financial information relevant to the necessity of the Estates to file current or historical tax returns.

**I.      Asset Disposition.**

44.     During the time covered by the Second Interim Application and the Third Interim Application, timekeeper Stillings expended 19.9 hours having a value of $11,422.50 in connection with this category. Services rendered by Mr. Stillings during this time include negotiating with insurance carriers appropriate language to include in orders approving sales of Policies, revising an affidavit of the Trustee to be included in a motion to approve sales of Policies, responding to an objection filed by a group of investors to a proposed sale, and discussing and negotiating with co-owners of Policies the potential sales of such Policies.

**EXPENSES INCURRED BY PROSKAUER RELATED TO SERVICES PROVIDED
DURING SIXTH INTERIM PERIOD**

45.     The actual and necessary amounts expended by Proskauer during the Sixth Interim Period are detailed in the invoice attached to the Application. During the Sixth Interim

Period, Proskauer incurred net expenses[3] related to the Chapter 11 Cases in a total amount of

$412.02, as follows:

| TYPE OF EXPENSE | AMOUNT DISBURSED |
|---|---|
| Reproduction Costs and Services | $98.70 |
| Court Reporting Service | $106.25 |
| Long Distance Telephone | $3.14 |
| Postage | $9.92 |
| Messenger Delivery | $113.16 |
| PACER | $114.80 |
| Filing and Court Costs | $2.05 |
| Facsimile | $4.00 |
| Reimbursed Expenses | ($40.00) |
| **TOTAL** | **$412.02** |

**A. Reproduction Costs and Services.** In order to properly attribute in-house photocopies

to each client, Proskauer maintains a record of copy charges made through a computerized

system. This procedure requires the operator to key in a client's code number on a keypad

attached to the copier. In this fashion, the copies are not considered "overhead," the cost of these

copies is not factored into Proskauer's hourly rates, and clients are therefore not expected to pay

for copies made on behalf of other clients. The cost charged for Proskauer's in-house duplication

is ten cents ($0.10) per copy. All copying and reproduction charges were necessary to the proper

representation of the Trustee in the Chapter 11 Cases.

**B. Reimbursed Expenses.** Proskauer received $40.00 from parties who previously received

documents from Proskauer relating to these cases. This amount was a reimbursement for copy or

other costs incurred in the production of such materials, and thus reduces the amount that

Proskauer now seeks back from the Estates.

---

[3] During the Sixth Interim Period, Proskauer also incurred expenses for which it generally seeks reimbursement, but for which it does not seek reimbursement here. These expenses may include, without limitation, Word Processing, Proofreading, online legal research and facsimile charges. Proskauer typically seeks and obtains reimbursement from its clients for these types of expenses, but is not seeking reimbursement of these expenses from the Estates.

21

**C. PACER.**  Proskauer incurred costs using PACER to access documents in the PCI receivership case.

**D. Long Distance Telephone.**  Proskauer does not charge its clients for local telephone usage.  Proskauer maintains a record of long distance telephone calls made through a system whereby the caller must assign each long distance call to a client number.  Proskauer makes no profit on long distance telephone expenses.

**E. Postage.**  Although the Estates have retained, and the Trustee and Proskauer often use, the services of GCG as notice and claims agent, Proskauer may have provided notice of hearings or other documents itself when doing so was more cost effective than employing the use of GCG's notice and service team. These and other documents mailed in connection with the Chapter 11 Cases were mailed by Proskauer using First Class United States Mail (as opposed to courier or special messenger services where appropriate, as described below).

**F. Messenger Delivery.**  The exigency of certain situations and/or the need to securely deliver transaction or other documents occasionally required the use of air courier delivery or service company services to parties located outside of the Chicago metropolitan area and the use of messenger services or service company services to parties located within the Chicago metropolitan area.  These charges were necessary to the proper representation of the Trustee, and were used sparingly.

**G. Court Reporting Service.**  Proskauer incurred certain costs obtaining transcripts of proceedings before this Court for its use in administering and prosecuting these chapter 11 cases.

## REASONABLENESS OF FEES AND DISBURSEMENTS

46.    The professional services rendered by Proskauer at all times during the Chapter 11 Cases have required a high degree of professional competence and expertise, so that the

22

numerous issues requiring evaluation and response by the Trustee could be addressed with skill and dispatch. The provision of such services, therefore, has required the expenditure of substantial time and effort.  All fees and costs for which allowance is requested by Proskauer in this Application, specifically including fees and costs incurred during the Sixth Interim Period, were reasonable and necessary and were performed on behalf of the Trustee, and not for or on behalf of any other person.

47.     The amounts requested herein are fair and reasonable under section 330 of the Bankruptcy Code due to: (a) the complexity of the Chapter 11 Cases and the issues involved therein; (b) the time Proskauer expended on the Chapter 11 Cases; (c) the nature and extent of services rendered; (d) the value of services that Proskauer actually provided to the Trustee; and (e) the costs of comparable services other than in a case under the Bankruptcy Code.

48.     Proskauer has attempted to avoid having multiple attorneys appear or convene on behalf of the Trustee. Multiple representation occurred only when the circumstances required more than one attorney participate in Proskauer's representation of the Trustee due to the volume of activity, the complexity or importance of an issue, or where continuity of representation had to be maintained. Multiple representation in analogous circumstances has been approved.  See Berberena v. Coler, 753 F.2d 629 (7th Cir. 1985).

49.     Given the nature and quality of the services rendered, the time constraints imposed on Proskauer, the interests at stake, the amounts involved, the responsibility assumed by Proskauer, the preclusion of working on other matters given the time expended on these cases, and the experience, ability, and standing of the attorneys involved, (a) the interim compensation requested for legal services rendered during the Sixth Interim Period and (b) the final compensation requested for legal services rendered during the Final Application Period are

23

reasonable amounts that should be allowed in full.   Likewise, the amount of out-of-pocket expenses incurred during both the Sixth Interim Period and the Final Application Period are reasonable amounts that should be allowed in full.

### NOTICE

50.      Proskauer has served this Application upon: (a) the Office of the United States Trustee; and (b) all parties that have requested service in the Chapter 11 Cases.  Proskauer also has posted this Application to the website dedicated to the Chapter 11 Cases maintained by GCG. Given the circumstances of the Chapter 11 Cases and creditors' widespread use of the website maintained by GCG, Proskauer requests that the Court deem notice provided to be good and sufficient.

### CONCLUSION

51.      No agreement exists between Proskauer and any third person for the sharing of compensation received by Proskauer in these cases, except as allowed by the exception set forth in section 504 of the Bankruptcy Code and Bankruptcy Rule 2016 with respect to the sharing of compensation among partners of Proskauer.

52.      During the Sixth Interim Period, Proskauer timekeepers have devoted no less than 629.0 hours to represent the Trustee as described above and the detailed invoice attached hereto. In so doing, Proskauer has provided the Trustee with actual and necessary legal services worth a total of no less than $231,920.50 and has incurred expenses totaling no less than $412.02.

53.      Copies of Proskauer's invoice reflecting the time recorded for services provided in the Sixth Interim Period, organized in project billing categories, and expenses incurred in the Sixth Interim Period are attached hereto as **Exhibit 1**.

24

54.     During the Final Application Period, Proskauer timekeepers have devoted no less than 6,656.2 hours to represent the Trustee as described in the Previous Interim Applications and in this Application and the detailed invoice attached hereto and to the Previous Interim Applications. In so doing, Proskauer has provided the Trustee with actual and necessary legal services worth a total of no less than $1,875,199.50 and has incurred expenses totaling no less than $11,265.80.

WHEREFORE, Proskauer respectfully requests that this Court enter an order:

A.     Granting interim allowance of compensation in favor of Proskauer in the amount of $231,920.50 for the actual, necessary, and reasonable professional services rendered on behalf of the Trustee during the Sixth Interim Period;

B.     Granting interim allowance of reimbursement of expenses in favor of Proskauer in the amount of $412.02 for actual, necessary, and reasonable expenses incurred on behalf of the Trustee during the Sixth Interim Period;

C.     Granting final allowance of compensation in favor of Proskauer in the amount of $1,800,503.03 for services rendered during the Final Application Period, which amount is calculated as (i) $1,492,060.03 of fees previously approved by this Court on an interim basis, (ii) $231,920.50 fees for the actual, necessary, and reasonable professional services rendered on behalf of the Trustee during the Sixth Interim Period; (iii) $12,607.50 in fees previously denied by this Court for periods prior to the Sixth Interim Period, as described in paragraphs 21 to 24 above; and (iv) $63,915.00 in fees incurred prior to the Sixth Interim Period, but not previously requested by Proskauer, as summarized in paragraph 25 and described in this Application.

D.     Granting final allowance of reimbursement of expenses in favor of Proskauer in the amount of $11,265.80 for actual, necessary, and reasonable expenses incurred on behalf of

the Trustee during the Final Application Period, which amount is calculated as $10,853.78 in expenses previously approved by this Court on an interim basis plus $412.02 in expenses incurred by Proskauer during the Sixth Interim Period;

E.      Authorizing the Trustee to pay to Proskauer from assets of the Trust $606,027.34, calculated as $1,800,915.05 (the amount of fees and expenses requested by Proskauer for final allowance during the Final Application Period) less $1,194,887.69 (the total amount paid to Proskauer as of the date hereof); and

F.      Granting such other and further relief as the Court deems equitable and just.

Dated:  February 17, 2012                    Respectfully submitted,

                                             */s/ Jeremy T. Stillings*

                                             Jeremy T. Stillings (ARDC# 06279868)
                                             PROSKAUER ROSE LLP
                                             70 West Madison, Suite 3800
                                             Chicago, Illinois 60602-4342
                                             (312) 962-3550, (312) 962-3551 (Fax)

                                             *Counsel to the Trustee*

26